UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
:
UNITED STATES OF AMERICA, :
:
: No. 18-mj-10891
:
-v- :
:
:
:
ARON ROSNER, :
:
Defendant. :
X
------------------------------------------------------------------------

---

**MEMORANDUM IN SUPPORT OF ARON ROSNER'S MOTION FOR BAIL**

---

Henry E. Mazurek
Evan L. Lipton
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, New York 10017
Tel: (212) 655-3500

*Attorneys for Defendant Aron Rosner*

## Introduction and Legal Standard

Because Aron Rosner is presumed to be innocent, the Supreme Court has observed that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). As the Supreme Court recognizes, "the function of bail is limited." Stack v. Boyle, 342 U.S. 1, 4 (1954). The underlying goal is securing the presence of the defendant rather than "the sum of bail." United States v. Nebbia, 357 F.2d 303, 304 (2d Cir. 1966). When deciding an issue of pretrial release, the Second Circuit has noted that "the court should bear in mind that it is only a limited group of offenders who should be denied bail pending trial." United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987). Indeed, the Bail Reform Act requires that the Court impose "the least restrictive . . . condition, or combination of conditions, that will . . . reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(c)(1)(B).

While there is a presumption of detention for kidnapping charges, this presumption is rebuttable. The presumption imposes on the defendant a "burden of production," while the "burden of persuasion" remains with the government. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Although this burden "is not heavy," the defendant must introduce some evidence contrary to the presumed fact. United States v. Rodriguez, 950 F.2d 85, 88 (2d Cir. 1991). A defendant can satisfy this burden by coming forward "with evidence that he does not pose a danger to the community or a risk of flight." Mercedes at 436. Even if the defendant presents some evidence satisfying his or her burden, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id. In Jessup, the benchmark case defining this burden shift, the court explained:

> Since the presumption is but one factor among many, its continued consideration by the magistrate does not impose a burden of persuasion upon the defendant.

1

> And, since Congress seeks only consideration of the general drug offender/flight problem, the magistrate or judge may still conclude that what is true in general is not true in the particular case before him. He is free to do so, and to release the defendant, as long as the defendant has presented some evidence and the magistrate or some judge has evaluated all of the evidence with Congress's view of the general problem in mind.

United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985).

As demonstrated below, the Government has not met its burden of establishing by clear and convincing evidence that Aron Rosner is a danger to the safety of the community or by a preponderance of the evidence that he is a flight risk. Therefore, Mr. Rosner should be released.

### Proposed Conditions of Release

While this memorandum paints a clearer picture of Aron Rosner justifying his release, in an abundance of caution, we offer the following conditions that we respectfully submit are more than sufficient to ensure his appearance during this case and ameliorate any of the risks asserted by the Government:[1]

(1) A $10 million dollar bond signed by Aron Rosner and 9 other financially responsible persons; secured by four properties, three of which are primary residences of the families posting them as bond. These residences include equity in an amount of approximately $6.5 million dollars;

(2) Travel restricted to the Eastern and Southern Districts of New York;

(3) Surrendering of Rosner's passport, and an agreement not to secure new travel documents;

(4) Strict Pretrial Services supervision;

---

[1] Prior to submitting this motion to the Court, the proposed conditions were submitted to the Government to determine whether we could move on consent of the parties. However, the Government stated that there are no conditions under which it will agree to Rosner's release.

2

(5) Home detention with GPS monitoring;

(6) That while Rosner shall be granted access to a computer in order to review the discovery provided in this case and other case-related materials provided by his lawyers, he shall not be permitted internet access;

(7) That Rosner is permitted access to one telephone that will be provided and approved by Pretrial Services to make and receive calls to and from phone numbers agreed to by counsel for Rosner and the Government; and

(8) That Rosner will not directly or indirectly associate or have contact, outside the presence of his counsel, with his co-defendants, alleged co-conspirators, or any individual currently or formerly associated with Lev Tahor; however, this does not limit the defense attorneys and their investigators from conducting appropriate defense investigation.

## ARGUMENT

**BECAUSE ARON ROSNER HAS PRESENTED SUFFICIENT CONDITIONS OF RELEASE TO REASONABLY ASSURE HIS FUTURE APPEARANCE IN COURT AND BECAUSE HE POSES NO DANGER TO THE COMMUNITY UNDER THESE CONDITIONS, THE BAIL REFORM ACT DIRECTS THIS COURT TO RELEASE HIM PENDING TRIAL**

### A. Personal Background

Aron Rosner is 45 years old. He grew up in Brooklyn, New York as a member of the Satmar orthodox Jewish community. He attended yeshiva in Williamsburg, Brooklyn. He has lived his entire life in Brooklyn. Mr. Rosner has six children, including two severely handicapped ▮ children, who are 8-year-old twins. One of them, ▮, requires around-the-clock care due to a severe heart condition, which already has required multiple open-heart surgeries, and Aron has been ▮ primary caretaker since his birth. Indeed, Aron has been the primary caretaker of all the minor children because his wife, Hendy, maintains near full-time employment as a data entry clerk at a business in Williamsburg, Brooklyn. Mr. Rosner spends most of his time at home caring for the youngest children, including the ▮ twins.

3

Aron Rosner does not present a flight risk or danger to the community. He was arrested in this case largely because of his laudable character trait of helping those in need. Aron has two brothers who left the family at young ages to join the ultra-orthodox Jewish sect, called Lev Tahor. These brothers have lived in Canada, Mexico, and most recently Guatemala. They have lived in near impoverished conditions during much of their time away from the family in Brooklyn. Aron Rosner has supported them with modest financial payments whenever he was able, transferring several hundred dollars to them and the community every few weeks. The conditions in Lev Tahor were always fairly grim, including living in tent-like structures and without a steady source of revenues to buy food and clothing. Aron Rosner was a benefactor because he did not want to see any member of the community, including his brothers and their families, to suffer.

Aron Rosner is not a member of Lev Tahor. He prays and assembles in a Satmar synagogue in Williamsburg, Brooklyn with his wife and children. He does not condemn his brothers for leaving the family and synagogue they were raised in, but he did not join them. His life in Brooklyn is consumed by the care for his children and contributing to the Satmar community there. He is known as a particularly trusting and responsible member of several community synagogues, such that he was trusted to take care of solemn religious rituals. For example, he was tasked by his synagogue to properly dispose of leftover bread and old prayer books taken from religious events. This was a special task because it had to be completed under strict religious rules, often unsupervised by rabbis. Aron Rosner was designated as the person to carry out this task because he was a loyal, trusted and responsible member of his Satmar synagogue. Clearly, this task would not be designated to him if he were practicing a different and unrecognized form of the religion, which is preached to members of Lev Tahor.

To the extent that the Government claims that Aron Rosner is a member, substantive supporter or advocate for Lev Tahor, this will be soundly disproven at trial. Also, Aron Rosner did not conspire or otherwise knowingly aid and abet the kidnappings of the two children who are the subjects of these charges. He should be granted release to defend his position in this case.

### B. The Criminal Complaint

On December 24, 2018, Aron Rosner was presented on the Criminal Complaint filed before this Court. See Complaint No. 18 Mag. 10891 (S.D.N.Y.). These charges largely arise out of a domestic dispute between a mother and father, who were living in the Lev Tahor community in Guatemala with Aron Rosner's brothers.

The mother of the two children who were taken out of the country, as alleged in the Complaint, initially left Lev Tahor with four of his six children. She did not reach agreement with her husband in this decision, but acted unilaterally taking her four youngest children with her. Later, she sought assistance to take the two oldest children, ages 14 and 12, from the community as well. These are the children who are the subject of the Government's Complaint against Aron Rosner.

The mother of "Victims 1 and 2," as they are called in the Complaint, took the children to New York. The father followed them here and a custody battle ensued in Family Court in Brooklyn. The father asked Aron Rosner to assist him in his interactions with New York Family Court officials and child services staff. Because Aron often acts to help those in need, he agreed to attend meetings with the father and offered his moral support. These interventions apparently now lead the Government to believe Aron Rosner conspired to kidnap the two children.

While Aron Rosner offered to assist the father in his dealings with the Court and with representatives of the mother, the evidence will not show that he acted in conspiratorial agreement to abduct the children and take them out of the United States. Indeed, the facts will show that Aron Rosner acted always to assist the father within the legal custody battle that the parents were engaged in, here in Brooklyn. Aron believed, based on his dealings with the father, that the two oldest children wanted to return to live with the father. Aron tried to help the father respond to challenges posed by the Family Court and child services organization in New York, particularly since the father had been living many years outside the United States and felt overwhelmed by these issues. In its haste to arrest people here in New York during the time that the children were outside the United States, the government swept up Aron Rosner to gain leverage to find the children. To Aron's credit, upon his arrest, he assisted Government officials to locate the children.

Aron Rosner poses no flight or danger risk to do anything other than properly defend the charges against him in this Court and to show the Government that he did not agree with or conspire with others to abduct the children in question. The facts will show that Aron Rosner always believed he was assisting the father in engaging in a proper, legal custody battle in Brooklyn.

### C. Aron Rosner Should be Released on Conditions Because He Is Not a Danger to the Community or a Flight Risk

1. Rosner is Not a Danger to the Community

Aron Rosner has no prior criminal history or has had any contact whatsoever with law enforcement before his arrest in this case.

He is an extremely peaceful and sensitive person according to testimonials of any of the proposed suretors who have come forward to sign bail for him, or any of those more generally who ever have come in contact with him.

Even according to the facts alleged in this Complaint, there is no evidence that Aron Rosner posed a danger to anyone outside of the two children at issue, and these children are now safely returned to Brooklyn and have been placed with family service organizations here. Also, Aron Rosner is not charged with acting in any physical way to abduct the children. The Government's theory as to Aron Rosner's involvement was strictly as someone who provided modest financial support (which Aron was doing for his brothers well before the events in this case as a humanitarian gesture, not to assist a kidnapping) and by lending a van to the venture. These are not indicators that Mr. Rosner is prone to violence by any stretch.

2. Aron Rosner Is Not a Flight Risk

Aron Rosner is likewise not a flight risk. He is a United States citizen who has lived his entire life in New York. There is no basis to believe Mr. Rosner will do anything but defend these charges in Court and will appear each time he is required to.

Mr. Rosner has his wife and six children here in New York. Everything about his past indicates that he would never abandon them. Indeed, his youngest twins are medically dependent on the care they are receiving here to survive. Particularly, one of the twins, ▇ requires constant medical supervision for his perilous heart condition and to prepare for required future surgeries to correct the uneven bone structure that is developing in his legs. By fleeing, Aron Rosner would be abandoning the child who needs him the most, and if Aron were to take his children with him outside the country, he would be endangering ▇ life. This is not an understatement. None of this is going to happen. Nothing in Aron Rosner's

history indicates he would ever contemplate acting in a way inconsistent with his family's interest, particularly anything that can jeopardize the health and safety of his children.

Given the fact that Aron Rosner is a United States citizen without a criminal (or arrest) record who has lived and worked his life in New York, he should be released under a traditional personal recognizance bond secured by property and co-signors subject to pretrial supervision. In other words, the defense should not have to resort to the extreme conditions set forth above involving, among other things, full house arrest with a GPS monitor, monitored communications, and no Internet access. However, in order to ensure that Aron Rosner is released to care for his children, especially his ailing twin, ▓, we are willing to do so.

A review of other cases within the Second Circuit where draconian bail conditions were imposed, similarly to those proposed here, reveals that the facts alleged against Mr. Rosner and his personal circumstances are immeasurably more favorable to him than in these other cases where bail was ordered. Over the past ten years, there have been a number of high profile cases where strict conditions of house arrest have been granted over the Government's objection. The ultimate decision by these courts to release the defendants in these cases turned on several factors, all of which weigh in Mr. Rosner's favor here. First, many of these decisions turned on the citizenship status of the defendant. Second, several turned on whether the offense conduct comprised threats to witnesses or charges of obstruction of justice. Third, several of the cases focused on whether the defendant lied to the court in regard to his financial resources or as to assets overseas. A review of several of the recent decisions in this area indicates that Mr. Rosner's case is one where release on conditions should be granted. See e.g., United States v. Brooks, No. 06 Cr. 550 (JS) (E.D.N.Y. 2008) (defendant released on rigorous bail conditions despite the fact that he had bought a house in London the day the

Indictment against him was filed, and despite meaningful attempts by the defendant to obstruct the investigation, including the removal of a number of computers he allegedly used to engage in the charged conduct); United States v. Dreier, 596 F.Supp.2d 831 (S.D.N.Y. 2009) (defendant released on bail despite court's finding that he was dishonest about international travel and evidence that he was hiding assets from the alleged "colossal criminality" of his fraud); United States v. Madoff, 586 F.Supp.2d 240 (S.D.N.Y. 2009) (in one of the largest fraud cases in this nation's history, defendant was released on restrictive conditions of house arrest, despite the fact defendant knew he was facing a life sentence and even though the government proved probable access to substantial illegal assets); United States v. Seng, No. 15 Cr. 706 (VSB) (S.D.N.Y. 2015) (defendant, a citizen of China worth $1.8 billion, was arrested on a complaint while boarding his private jet departing the United States; despite massive personal wealth, access to private jets, the absence of any ties to the U.S., and that he was charged with a large-scale bribery of a United Nations Official, defendant was released on strict house arrest); United States v. Webb, No. 15 Cr. 252 (PKC) (E.D.N.Y. 2015) (defendant, a citizen of the Cayman Islands who was extradited from Switzerland, was released on a $10 million bond with the condition of strict house arrest in international FIFA bribery case).

A comparison of these cases to Mr. Rosner's case strongly favors Mr. Rosner's release on the conditions proposed here. First, Rosner is a United States citizen who has no prior criminal contacts at all. Second, Rosner does not have substantial private wealth or immediate access to it as these other defendants had. Third, there are no allegations against Mr. Rosner of witness tampering or obstruction of justice. Accordingly, a review of recent cases, where defendants were released under conditions of strict house arrest, provides further support that Mr. Rosner also should be granted release on the conditions proposed.

## Conclusion

For the reasons set forth above, we move this Court to release Aron Rosner under the following conditions:

(1) A $10M bond signed by Aron Rosner and nine (9) additional co-signors, secured by four (4) separate properties with equity in the amount of approximately $6.5 million;

(2) Travel restricted to the Eastern and Southern Districts of New York;

(3) Surrender of Rosner's passport, and an agreement not to secure new travel documents;

(4) Strict Pretrial Services supervision;

(5) Home detention with GPS monitoring at Rosner's Brooklyn residence;

(6) That while Rosner shall be granted access to a computer in order to review the discovery provided in this case and other case-related materials provided by his lawyers, he shall not be permitted internet access;

(7) That Rosner is permitted access to one telephone that will be provided and approved by Pretrial Services to make and receive calls to and from phone numbers agreed to by counsel for Rosner and the Government; and

(8) That Rosner will not directly or indirectly associate or have contact, outside the presence of his counsel, with his co-defendants, alleged co-conspirators, or any individual currently or formerly employed by or associated with Lev Tahor; however, this does not limit the defense attorneys and their investigators from conducting appropriate defense investigation.

Respectfully submitted,

_____s/HEM_____
Henry E. Mazurek
Evan L. Lipton
Meister Seelig & Fein LLP
125 Park Avenue, Suite 700
New York, New York 10017
*Counsel for Defendant Aron Rosner*